[Cite as *State v. Shoecraft*, 2017-Ohio-8771.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                              Court of Appeals No. L-16-1228

    Appellee                                          Trial Court No. CR0201601369

v.

Jeffrey Shoecraft                                       **DECISION AND JUDGMENT**

    Appellant                                         Decided:  December 1, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Jeffrey Shoecraft, appeals from the judgment of the Lucas County Court of Common Pleas, following a jury trial, convicting him of one count of rape and one count of kidnapping.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

**{¶ 2}** On January 17, 2016, the victim, H.T., was leaving her car in order to enter a store in Toledo, Lucas County, at approximately 6:00 p.m. on a cold Sunday evening. H.T. testified that appellant, a complete stranger to H.T., entered her car on the passenger side and pulled her back in by her hair and held the back of her neck to restrain her movement. H.T. stated that appellant smelled of alcohol, and he coerced her to drive him to a liquor store downtown. Appellant gave directions to H.T. as she was unfamiliar with the greater Toledo area.

**{¶ 3}** Once H.T. pulled into the parking lot of the liquor store, appellant tried to kiss her while still holding onto her neck. He forced his hands down her pants and digitally penetrated her vagina despite her efforts to resist. After appellant took his hand out, he asked H.T. for her phone number. H.T. initially gave him a fake number, but when her phone did not ring when he called it, H.T. eventually gave him her real number. After they had exchanged numbers, H.T. took a picture of appellant to save it alongside his number. Then appellant exited the car and walked into the apartment complex behind the liquor store.

**{¶ 4}** Immediately thereafter, H.T. used her GPS and went to the nearest sheriff's office where they walked her over to the Toledo Police Department. H.T. reported that she had been sexually assaulted. The desk officer testified that H.T. was so distraught that she was lying on the floor crying. H.T. also later gave appellant's photo and phone

2.

number to the police. After reporting the sexual assault, H.T. went to Blanchard Valley Hospital in Findlay to have a rape kit conducted on her.

{¶ 5} The examination of rape kit showed physical injuries of vaginal tearing, redness, and tenderness at the vaginal opening. H.T.'s undergarments and vaginal swabs were taken for examination. After conventional DNA testing, appellant was specifically excluded from the collected samples. However, through specialized testing to male specific results, although the major contributor was H.T.'s boyfriend, with whom she had a consensual sexual encounter the night before, there was an indicator of an unknown male that was sufficient for comparison. The test results were inconclusive whether appellant was a possible contributor.

{¶ 6} Appellant was arrested on February 17, 2016. After his arrest, he entered into a stipulation with the state to take a polygraph examination. Some relevant questions that were asked of appellant were, "did you ever touch H.T.'s bare vagina?"; "did you ever put your finger into H.T.'s vagina?"; "did you ever force H.T. to drive you anywhere?"; "did you ever commit any sex act on H.T.?" The polygraph administrator testified that appellant's responses to these questions indicated deception. He also testified that the examination was peer-reviewed with similar results.

{¶ 7} After the state rested its case, appellant took the stand in his own defense and offered a different version of the events. Appellant testified that he was job hunting on that Sunday evening and missed the last bus downtown. He attempted to catch a ride with a couple of cars in the parking lot until coming across H.T., who offered to give him

3.

a ride to where he needed to go as long as directions were provided. He asked H.T. to drive him to his friend's apartment, which was near a liquor store. After arriving, he thanked her for the ride, and told her that he would compensate her with a paycheck after a few weeks. The two exchanged phone numbers and appellant allowed H.T. to take a picture of him if she doubted his intent to compensate. He stringently denied attempting to sexually assault or kiss H.T. in any way.

{¶ 8} Following the presentation of evidence, the jury found him guilty of rape in violation of R.C. 2907.02(A)(2), and kidnapping in violation of R.C. 2905.01(A)(2), both felonies of the first degree. At sentencing, the trial court ordered appellant to serve seven years in prison on the count of rape, and nine years in prison on the count of kidnapping. Further, the trial court ordered the sentences to run consecutive to each other for a total prison term of 16 years.

## II. Assignments of Error

{¶ 9} Appellant has timely appealed his judgment of conviction, asserting two assignments of error for our review:

1. The State of Ohio failed to produce legally sufficient evidence to establish rape and kidnapping.

2. The evidence presented at trial fell against the manifest weight of the evidence for conviction.

4.

### III.  Analysis

{¶ 10} Appellant's first assignment of error argues that the state failed to produce legally sufficient evidence to establish rape and kidnapping.  "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law."  *State v. Shaw*, 2d Dist. Montgomery No. 21880, 2008-Ohio-1317, ¶ 28, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  When reviewing the sufficiency of the evidence, the appellate court's duty is to examine the evidence admitted at trial and determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  The standard is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Id.*

{¶ 11} In this case, appellant was convicted of one count of rape, under R.C. 2907.02(A)(2), which states that no person shall purposely compel another to engage in sexual conduct by force or threat of force.  Digital penetration of H.T.'s vagina, however slight, is sexual conduct sufficient to complete vaginal intercourse.  R.C. 2907.01(A).

{¶ 12} H.T. testified that appellant grabbed her by the hair, pulled her back into the car and held the back of her neck, restraining her movement.  Once H.T. drove to the destination of appellant's demand, appellant attempted to kiss her.  H.T. rejected by

5.

clenching her lips tightly closed and refusing his verbal pleas for her consent to sex. Ultimately, appellant forced his right hand into H.T.'s pants, digitally penetrating her vagina while holding the back of her neck with his left hand.

{¶ 13} Ohio courts have consistently held that a victim's testimony, if believed, is sufficient to support a rape conviction. *See State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 53. Thus, when viewing the evidence in a light most favorable to the prosecution, H.T.'s sworn testimony alone is sufficient to support the rape conviction.

{¶ 14} Furthermore, there was corroborating evidence from the nurse who performed the rape kit on H.T., who testified that there was vaginal tearing, redness, and tenderness at the vaginal opening, generally indicative of trauma to the area that may have been caused by digital penetration. In addition, the Y-STR DNA tests identified an additional male DNA and could not exclude appellant as a contributor.

{¶ 15} Therefore, we hold that there was legally sufficient evidence to support the jury's finding that appellant committed rape.

{¶ 16} Appellant was also convicted of one count of kidnapping, under R.C. 2905.01(A)(2). The statute states that no person, by force, threat, or deception shall remove another from the place where the other person is found or restrain the liberty of the other person in order to facilitate the commission of any felony or flight thereafter.

{¶ 17} Here, H.T. testified that appellant pulled her hair and forced her back into her car, restrained her continuously by holding the back of her neck, and compelled H.T.

6.

to drive him to the liquor store parking lot. There he committed the felony of rape by digitally penetrating her. Therefore, when viewing the evidence in a light most favorable to the state, we find the evidence legally sufficient to support appellant's conviction for kidnapping under R.C. 2905.01(A)(2).

{¶ 18} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 19} In his second assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. A manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. In making this determination, the court of appeals sits as a "thirteenth juror" and, after

> review[ing] the entire record, weighs the evidence and all reasonable
> inferences, considers the credibility of witnesses and determines whether,
> in resolving conflicts in the evidence, the court "clearly lost its way and
> created such a manifest miscarriage of justice that the conviction must be
> reversed and a new trial ordered." The discretionary power to grant a new
> trial should be exercised only in exceptional cases where the evidence
> weighs heavily against the conviction (citations omitted).

*State v. Caudill*, 6th Dist. Wood No. WD-07-009, 2008-Ohio-1557, ¶ 58.

{¶ 20} Further, it is the fact finder's duty is to resolve disputes of fact and weigh the credibility of witnesses appearing before them, as they are in the best position to hear, observe, and comprehend each witness. *State v. Clay,* 34 Ohio St.2d 250, 298 N.E.2d

7.

137 (1973). Thus, special deference is given to fact finder's determination of credibility given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 21} Appellant argues that H.T.'s testimony is not believable. H.T. claimed that appellant had his hand on the back of her neck during the entire drive to the liquor store, while committing rape by shoving his hand down her pants, while trying to kiss her, while demanding her phone number and putting not one, but two numbers into his phone, and while calling her both times to determine if it was her real number. Appellant argues that it would be an amazing string of feats to accomplish all of that while keeping enough force on H.T. so that she did not run away. Appellant also argues that H.T. blatantly took a picture of the appellant. He asserts that it would not make sense that someone who was allegedly controlling the incident would let that happen and not attempt to take her phone.

{¶ 22} The jury, however, implicitly found appellant's version of the events, to be less credible. Both appellant and H.T. testified that he approached her at approximately 6:00 p.m. H.T. testified that the encounter lasted what felt like "a really long time." Appellant, on the other hand, testified that his encounter with H.T. was very brief, and that they only drove from the parking lot of Barnes and Noble down the street to the liquor store. Appellant quickly thanked H.T. and got out of the car. Notably, a Toledo

8.

Police Department detective testified that he observed, via video from one of the police department's cameras, what appeared to be H.T.'s car leaving the parking lot of the liquor store at approximately 7:15 p.m., over one hour after the encounter began, thus supporting H.T.'s version of the events. In addition, appellant also testified that he had spent the day applying for jobs, but on cross-examination appellant could not recall a single company that he applied to, and H.T. testified that he smelled strongly of alcohol. Thus, we hold that the jury did not lose its way in determining the credibility of the witnesses.

{¶ 23} Appellant additionally contends that the jury lost its way and became confused due to the testimony of the polygraph examiner including the results of the examination. Appellant argues that polygraph examinations are not science, and on that point he is correct. Nevertheless, the examination and test results were admissible evidence pursuant to appellant's agreement with the state. Thus, the jury was free to consider the results of appellant's polygraph examination, which showed appellant to be untruthful.

{¶ 24} Therefore, upon our careful review of the record, we cannot find that this is the exceptional case in which the jury lost its way and created a manifest miscarriage of justice in convicting appellant of rape and kidnapping.

{¶ 25} Accordingly, appellant's second assignment of error is not well-taken.

9.

## IV. Conclusion

**{¶ 26}** For the foregoing reasons, we find that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.
_____
JUDGE

Arlene Singer, J.
_____
Thomas J. Osowik, J.                                        JUDGE
CONCUR.
_____
JUDGE